Good morning, Your Honors. Good morning. You may please the court. My name is Gary Lehendro. I represent City of Hope National Medical Center. Your Honors, this case is simply about a hospital attempting to enforce a direct promise that was made to it by a health plan to pay for certain individuals' health care. Tell me how it was a independent contract. How did AFL ratify it? Okay, Your Honor. There's a network contract that we're alleging, InterPlan, and that contract is formed in a most interesting way. The InterPlan contracts with providers such as City of Hope. It then contracts with payers such as providers, and it's in that other contract that we're alleging they expressly ratified the hospital agreement. In other words, they agree through that contract to be bound by the terms and provisions of the contract between the hospital and InterPlan. This is all, of course, on the pleading, and you did not furnish either the InterPlan contract or the plan, if I understand it correctly. Right? Yes, Your Honor. The complaint, we pled the legal effect of the contract. We didn't attach the actual contract to the complaint because they are often confidential. So it strikes me that the preemption disposition may be premature because the complaint itself actually does allege that the plan well, it refers, excuse me, the complaint actually refers to the plan in two respects. One of them being that the benefit coverage varies for each group and should be verified through the claims administrator, and the other being deductibles and co-payments. Now, how are we supposed to know just based on the pleading that those references are or are not related to the plan or consulting or not? Yes, Your Honor. It's my understanding those references are based on the InterPlan contract itself. Well, they may be, but they're referring to the plan, I assume. Yes. The problem we have here is, Your Honor, the hospitals don't always have a copy of the plan prior to litigation. Well, then why isn't it the issue premature at this point? Following Judge Ikuda's question, we really, we don't know what the contract is. I mean, we know what you've alleged, and it's about as thin as thin can be. But you have alleged that somehow AFL ratified and therefore became a party, I presume, to the InterPlan Network contract. That's correct. We don't have it. And that may not be, may not pan out. So why shouldn't the preemption decision be deferred to a more fully developed record? Well, Your Honor, I would submit that whether or not the hospital can succeed on the merits of its contract action is a matter for the trial court. I agree. What we're presenting today is that we have a separate claim based on a separate agreement. It's basically a promise from the health plan directly to the hospital. ERISA does not provide a remedy for the hospital to enforce that promise. I agree with that too, but that doesn't get you all the way there. Because if you nevertheless have got to either refer to the plan or it's connected with the plan or the plan is essential in some respect to this whole claim, then you're still in the preemption world, aren't you? I'm sorry. I didn't catch your last statement. You're still in the world of preemption. No, Your Honor. I don't believe we are. As this Court said in the Blue Cross case, the fact that the plan may be consulted during the course of a state law litigation does not make it an ERISA claim. Well, as I understand it, I share the same concerns that Judge Reimer is articulating. As I understand it, there are a number of contracts here. There's a contract between the plan and the beneficiary, your patient, that neither the hospital nor Interplan is a party to. There's a contract between the plan and Interplan, which the hospital is not a party to. And there's a contract between Interplan and the hospital. And your theory, I think, is that when the plan verified coverage for the patient under the Hawaiian plan, that that somehow created an oral contract between the plan and the hospital to pay for services that the plan doesn't cover. Isn't that what this fight is all about? No, Your Honor. It goes beyond that. The plan, as we're alleging... Try this. What's the contract that you're... What are the terms of this oral contract? And where do they arise? We've alleged breach of a written contract, Your Honor. Which written contract? The contract between the hospital and Interplan. How did AFL ratify the contract? That was my initial question. How did they ratify it? Well, by informing the hospital when the hospital called to verify benefits that it would be accessing that contract. And, you know, we believe that through the AFL and the health plan, or the health plan's third-party administrator, expressly ratifying the agreement between hospital and Interplan. So your argument, your breach claim, is based on the Interplan. You have a theory that AFL ratified it. That theory may prevail or it may not. But you're only looking to the Interplan, and your theory is that AFL is a party to it through its ratification. Am I correct in that? You are, Your Honor. Okay, thank you. Yes. And it's our position that, as I said earlier, there is no enforcement mechanism through ERISA to enforce that separate promise from the health plan to the hospital. Now, you could amend your complaint, and I take it this is what opposing counsel is suggesting. You could amend it to say, well, you are the assignee of the hospital and you have a suit on the ERISA plan. Is that correct? Yes and no, Your Honor. It is correct that the hospital could sue pursuant to the assignment of benefits and make an ERISA claim. However, we would be pursuing a completely different contract. Well, the assignment doesn't get you where you want to go. All the assignment would get you would be an ability to bring a claim directly against the plan for breach of the pension plan itself, or the welfare plan, right? That's exactly right. And that's not the contract you're suing on. That's right, Your Honor. That's why we chose to go after let me put it this way. The hospital, it's as if it has a quiver with two arrows in it. Well, why didn't you sue InterPlan? That's what I don't understand. If the contract is between the hospital and InterPlan and you're alleging a breach of that contract, why don't you sue InterPlan and then let InterPlan bring some sort of suit for contribution or indemnification against the plan? InterPlan is merely serving as an agent for the health plan. They're the party that agreed to pay according to that contract. AFL is the party you're saying, not InterPlan. Correct. So InterPlan is just an intermediary with no specific... And that all arises out of a meeting in the finance office at the hospital and the plan administrator saying, is our patient covered under the union welfare plan? Is that what you're saying? No. What I'm saying is they entered into this separate written contract with us. Your Honor, I see I just have a little time. Well, I'd like to get an answer to the question because I think it may be dispositive of the case, at least as far as I'm concerned. No. We're not saying that the mere verification of benefits is the basis for our separate claim. But what evidence are you going to show to establish the terms of this oral contract beyond confirmation by, I assume it was HMA, with City of Hope, that patient was a covered beneficiary under the union's welfare plan? We're going to show for the written contract, Your Honor. No, no, no. This has to be an oral contract unless you've got a written piece of paper between HMA and the hospital saying, we hereby ratify and adopt and agree to be bound by the terms of the InterPlan contract with the hospital. I think you're proceeding on an oral contract theory, are you not? No, Your Honor. We expect through discovery that we will obtain the InterPlan agreement between InterPlan and the health plan. We expect to see, as we have in other instances, that it has expressly ratified the agreement between InterPlan and the hospital. You don't know if the terms, well, we can't tell whether the terms of coverage are different, can we? I'm not sure I understand your question. The plan, I'm sure, has under its, I forget what it's called, summary plan document will explain what services are covered under the plan, but it sounds to me like the hospital's position is no, it actually agreed to cover more because the contract that we have with InterPlan covers more services than what the welfare plan agreed to cover in the summary plan document. Isn't there a discrepancy between scope of coverage under the two plans? Under the two agreements, yes. We believe that here they agreed to pay 90% of the hospital's charges. Of all charges, without regard to what the welfare plan agreed to cover in its plan? That's correct. Okay. All right. I think I understand your theory. Okay. All right. I'll give you a little time on rebuttal. Let's hear from the attorney for the plan. Thank you, Your Honor. Thank you. Good morning. Good morning. May it please the Court. I'm Elizabeth Lawrence representing the AFL Hotel and Restaurant Workers Health and Welfare Plan, which as the Court has probably pointed out is a Hawaiian plan ensuring Hawaiian employees working for Hawaiian employers, which is significant because we're here on a diversity and not on a 502A federal question basis, which means that most of the cases relied upon for this theory presented by the hospital are really irrelevant. What we need to do instead is, because of diversity jurisdiction, apply just the test that arises under 514A. That test, which has been established by the U.S. Supreme Court, requires only that we show that there is a relationship between the claims and the ERISA plan. Excuse me. I looked through your brief carefully to see whether AFL was saying it did not ratify the interplan contract, and I didn't see that. Are you taking any position on that? Did AFL ratify the interplan contract? AFL did not ratify that contract. That contract, as Justice Tolman pointed out, is really a series of contracts of which AFL had no part in that. They received a phone call when one of their participants was here in Los Angeles saying, is this person a participant in your plan? And the answer was yes. And that's the extent of their contract if one could stretch it to call it that. Contact is the better word with the hospital in Los Angeles. The hospital apparently has a contract with interplan. They attached a part of that to their complaint, one page of a 38-page exhibit attached to that complaint, which lists perhaps the AFL plan on it. But that same page warns that this is not an accurate list of participants and certainly doesn't create a contract or any kind of evidence that AFL ratified this contract. There's nothing in the complaint that says that AFL even knew that they were put on this list. AFL has presented, excuse me, interplan has presented to the hospital this very lengthy list saying all of these hospitals will do what we tell them, basically, without necessarily letting the hospitals know. There's certainly nothing in the complaint that indicates that the plan is aware that their name is on this contract and it certainly doesn't arise to any kind of enforceable contract. So as far as the plan is concerned, I assume there are provisions in the plan for out-of-network coverage in case somebody goes to California and needs medical coverage. That's exactly right. And in the summary plan description, we'd find out what the plan will cover for an out-of-network visit. And your position is the only thing that that telephone call did was to confirm that this patient is a participant in our plan and is covered for out-of-network services pursuant to the plan. That's exactly right, Your Honor. Okay. And so is your position then that as I understood from your brief, that the hospital should, if they want to bring a claim, they would have to do it as an assignee of the patient. Is that correct? Yes, Your Honor. Because there is no direct contract between the hospital and the plan. No, why isn't there? I'm sorry. Go ahead. I was wondering, why isn't that a merits issue as opposed to a jurisdictional issue? Because you'll go into court and say, we have no contract. We never ratified it. They're suing on a contract that doesn't exist. It's not a jurisdictional issue. And that's the important issue in this case that we're here on diversity and not on federal question. If it was a 502 case that brought us here, we removed because we're saying that it's a federal question or just on removal jurisdiction, then that analysis would be right. But we're here on diversity and, therefore, the question. So it's a preemption question. I misspoke when I said jurisdiction. What I meant was, why isn't that a merits question, whether or not there's a contract as opposed to a preemption issue? Because whether or not there's a contract, then the question becomes, is it related to the plan? We're here on a 12B6. We're here on a pleadings motion. And so have to accept the allegations of the complaint, which seem to say that AFL, in fact, did ratify the contract. Therefore, it's a party, and that's the party being sued for breach. That's correct, Justice Romer, although the Supreme Court in Dillingham, well, first in Ingersoll-Rand, says that the 514A preemption is conspicuous in its breadth. These cases are not supposed to be brought in State court. These cases are not supposed to be brought in court at all. There is a preemption that ERISA is to govern this. But, counsel, you're ignoring Marin General and Blue Cross. I mean, there's a fair body of Ninth Circuit case law recognizing that there may be contracts in existence between providers and plan administrators or plans that are separate from the ERISA plan. And if I understand the hospital's argument, that's the contract they're suing on. Your Honor, those cases, Blue Cross, Marin General, which gave a lot of guidance to us in this area, the Meadows, and the other side are all on jurisdictional issues. Those are all 502A analysis. And in Marin General in particular, it says we're remanding because there's no jurisdiction, but the plan is free to raise the 514A defense in court, and so this may still be preempted. And so that's the question that we've got here, that all of those other cases dealing with jurisdiction really aren't applicable here. Here, we're properly in the Federal court, and now we're applying the preemption of 514A. So are we back to Judge Reimer's concern that maybe we're a little premature on whether or not you actually have a 514 defense, since we don't have the contracts before? No, Your Honor, because that question really is the tail on the dog. What we have to look at for the 514A preemption is the two-part disjunctive test that the U.S. Supreme Court established in Dillingham, and that's whether the State law claim has a connection with the ERISA plan or reference to the ERISA plan. Well, I'm sort of mystified, because you're saying there is no contract between you and the hospital, so how could we possibly have to refer to your summary plan description in analyzing that issue? How does this nonexistent contract, which you say there is no contract, require us to examine the plan? It's not merely the contract. They've claimed negligent misrepresentation and quantum error would also. And what the complaint demands in the prayer is a certain amount of money, less the copayment, less any other contributions from the patient. So even on its very terms, you would have to go back to the plan, interpret the plan. Are deductions and copay in dispute? Is there a dispute over the amount? Or a payment of those? Is there any dispute related to those? We haven't gotten to that point in this case. But the 514A preemption just says that there are no State law claims if those claims are connected with or reference the ERISA plan, and clearly these claims do. And I take it the plan's position is we have paid out as much as our plan covers for services rendered to a patient outside our local area network. If the hospital brought this claim as an assignee, that question would actually be reviewed. So at this point you don't know the answer to that. Because they didn't bring the appeal. All we know is that the plan paid significantly less than what the hospital billed. That's right. And so the ERISA procedure requires that there be an appeal process. So the patient or the assignee of the patient, should the hospital take that status, could go and say you didn't pay right. And there's a process set up, and that's what typically happens, that they go back to the plan and they work out or they don't work out. But at any rate, they're given an answer that the SPD says this is what's to be paid for out of network. And there's certainly nothing that says we're going to pay 90 percent of any claim, no matter where it's brought, without any chance to review it. If there's no further questions, then I've just got out of time. Judge Reimer, do you have anything? No, thanks. Okay. Thank you very much, counsel. Mr. Lehendra, I'll give you a minute in rebuttal. Thank you, Your Honors. This court has consistently held that a hospital's claim to enforce a promise by the health plan to the hospital to pay for medical care does not relate to ERISA. And if I may, the policy that the court has recognized in making that determination is this, at least in support of that decision, is this, that if the hospitals are left without a mechanism to enforce those direct promises from the health plan to it, they'll be forced to go after, seek out, upfront payments from the patients prior to treating them. Otherwise, it's always running the risk. And for those who can't afford health care, they may have to forego health care. That is contrary to ERISA's stated purpose, which is to protect the beneficiary and make health care more widely available. Thank you, Your Honors. Thank you both very much. The case just argued is submitted. The next case on the calendar.
judges: Rymer, Tallman, Ikuta, Cjj